JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

17 5582

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ryan Kerwin

## DEFENDANTS
Parx Casino, et al.

**(b)** County of Residence of First Listed Plaintiff  Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ryan Kerwin
240 Brittany Dr., Langhorne, PA 19047

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
  Plaintiff
- ☒ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
  Defendant
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☒ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original
  Proceeding
- ☐ 2 Removed from
  State Court
- ☐ 3 Remanded from
  Appellate Court
- ☐ 4 Reinstated or
  Reopened
- ☐ 5 Transferred from
  Another District
  *(specify)*
- ☐ 6 Multidistrict
  Litigation -
  Transfer
- ☐ 8 Multidistrict
  Litigation -
  Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. Section 1 & 2
Brief description of cause:
Group Boycott/Essential Facilities Doctrine Violation

## VII. REQUESTED IN
COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
$600,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
12/13/2017

SIGNATURE OF ATTORNEY OF RECORD
*Ryan Kerwin*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**5582**

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **240 BRiTTANY DR. LANGHORNE, PA. 19047**

Address of Defendant: **MULTiPLE**

Place of Accident, Incident or Transaction: **LEHiGH, PHiLADELPHiA & BUCKS COUNTY**
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☑ No☐

Does this case involve multidistrict litigation possibilities? Yes☐ No☑
RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐ No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐ No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐ No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐ No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
(Please specify) **15 U.S.C. §182**

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, **RYAN KERWiN**, counsel of record do hereby certify:
☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☑ Relief other than monetary damages is sought.

DATE: **12/13/17** _____ **PRO SE**
Attorney-at-Law Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **12/13/17** _____ **PRO SE**
Attorney-at-Law Attorney I.D.#

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| RYAN KERWIN | : | CIVIL ACTION |
| v. | : | |
| PARX CASINO, ET. AL. | : | NO. 17  5582 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　　　(✓)

| | | |
|---|---|---|
| **12/13/17** | **RYAN KERWIN** | **RYAN KERWIN** |
| Date | Attorney-at-law | Attorney for |
| **267-702-8701** | | **RKERWIN@RUSHIELAW.COM** |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Ryan Kerwin                                              :

                                                        :        17    5582

        v.                                              :

Parx Casino, Greenwood Gaming &                         :
Entertainment LLC, Helmut Perzi, John/Jane              :
Doe Employees/Owners of Parx Casino,                    :
Sugarhouse Casino, Sugarhouse HSP Gaming                :        **FILED**
LP, Sugarhouse HSP Gaming Prop Mezz LP,                 :
Rush Street Gaming LLC, Linda Powers                    :        DEC 13 2017
Julia Spieler, Erika Joy Erb, Jules Vorndran            :        KATE BARKMAN, Clerk
John/Jane Doe Employees/Owners of                       :        By_____Dep. Clerk
Sugarhouse Casino, Sands Casino, Sands                  :
Bethworks Gaming LLC, James Hines, John/                :
Jane Doe Employees/Owners of Sands Casino,              :
Sands Bethlehem Event Center, John/Jane Doe             :
Employees/Owners of Sands Event Center,                 :
SMG Worldwide Entertainment & Convention                :
Venue Management, John/Jane Doe Employees/              :
Owners of SMG Worldwide Entertainment &                 :
Convention Venue Management                             :

## COMPLAINT

**I.      Jurisdiction & Venue;**

        1.      This court has jurisdiction over this civil action pursuant to 15 U.S.C. § 4 and 15

U.S.C. § 15.

        2.      The events giving rise to the instant claims and causes of action occurred in the

Counties of Bucks, Philadelphia and Lehigh, Pennsylvania making the United States District

Court for the Eastern District of Pennsylvania the appropriate venue for this action pursuant to

15 U.S.C. § 4 and 15 U.S.C. § 15.

**II.     Plaintiff;**

3.      Plaintiff, Ryan Kerwin is a citizen of the Commonwealth of Pennsylvania with his address located at 240 Brittany Drive, Langhorne, PA 19047. He is the owner of a mixed martial arts promotion doing business in the State of Pennsylvania called Xtreme Caged Combat and he has promoted mixed martial arts events longer than any promoter in the state's history.

4.      Xtreme Caged Combat is a sole proprietorship owned and operated by plaintiff and over the course of Xtreme Caged Combat's 8+ years of existence, its main region of operations has been the Philadelphia, Pennsylvania Market.

### III.    Defendants;

5.      Defendant, Parx Casino, is a Casino with an attached event center located at 2999 Street Road, Bensalem, PA 19020.

6.      Defendant, Greenwood Gaming & Entertainment LLC (hereafter referred to as Parx Casino), is the parent company of Parx Casino. It is located at 2999 Street Road, Bensalem, PA 19020.

7.      Defendant, Helmut Perzi, is the Director of Entertainment at Parx Casino. His business address is located at 2999 Street Road, Bensalem, PA 19020.

8.      Defendant, John/Jane Doe Employees/Owners of Parx Casino (hereafter referred to as Parx Casino), are owners or employees of Parx Casino later identified as defendants and are not listed herein.

9.      Defendant, Sugarhouse Casino, is a Casino with an attached event center located at 1001 N. Delaware Avenue, Philadelphia, PA 19125.

10.     Defendant, Sugarhouse HSP Gaming LP (hereafter referred to as Sugarhouse Casino), is the parent company of Sugarhouse Casino. It is located at 1080 N. Delaware Avenue, Philadelphia, PA 19125 and is a subsidiary of Sugarhouse HSP Gaming Prop Mezz LP.

11.    Defendant, Sugarhouse HSP Gaming Prop Mezz LP (hereafter referred to as Sugarhouse Casino), is the parent company of Sugarhouse HSP Gaming LP with its address located at 900 North Michigan Avenue, Suite 1900, Chicago, IL 60611.

12.    Defendant, Rush Street Gaming LLC (hereafter referred to as Sugarhouse Casino), is the managing company who runs and oversees the operations of Sugarhouse Casino with its address located at 900 North Michigan Avenue, Suite 1600, Chicago, IL 60611.

13.    Defendant, Linda Powers, is the Vice President of Marketing at Sugarhouse Casino. Her business address is 1001 N. Delaware Avenue, Philadelphia, PA 19125.

14.    Defendant, Julia Spieler, is the Catering Sales Manager at Sugarhouse Casino. Her business address is 1001 N. Delaware Avenue, Philadelphia, PA 19125.

15.    Defendant, Erika Joy Erb, is the Director of Marketing at Sugarhouse Casino. Her business address is 1001 N. Delaware Avenue, Philadelphia, PA 19125.

16.    Defendant, Jules Vorndran, is the Vice President of Marketing & Casino Operations at Sugarhouse Casino. His business address is 1001 N. Delaware Avenue, Philadelphia, PA 19125.

17.    Defendants, John/Jane Doe Employees/ Owners of Sugarhouse Casino (hereafter referred to as Sugarhouse Casino), are any owners or employees of Sugarhouse Casino later identified as defendants and are not listed herein.

18.    Defendant, Sands Casino, is a Casino with an attached event center located at 77 Sands Blvd., Bethlehem, PA 18015.

19.    Defendant, Sands Bethlehem Event Center (hereafter referred to as Sands Casino & Event Center), is the event center that is attached to Sands Casino. Its address is located at 77 Sands Blvd., Bethlehem, PA 18015.

20.    Defendant, Sands Bethworks Gaming LLC (hereafter referred to as Sands Casino & Event Center), is the parent company of Sands Bethlehem Event Center. Its

address is located at 77 Sands Blvd., Bethlehem, PA 18015.

21. Defendant, SMG Worldwide Entertainment & Convention Venue Management (hereafter referred to as Sands Casino & Event Center), is the facility management company that oversees the daily operations of Sands Event Center.

22. Defendant, James Hines, is the General Manager of Sands Bethlehem Event Center. His business address is located at 77 Sands Blvd., Bethlehem, PA 18015.

23. Defendant, John/Jane Doe Employees/Owners of Sands Casino (hereafter referred to as Sands Casino & Event Center), are any owners or employees of Sands Casino later identified as defendants and are not listed herein.

24. Defendant, John/Jane Doe Employees/Owners of Sands Event Center (hereafter referred to as Sands Casino & Event Center), are any owners or employees of Sands Casino later identified as defendants and are not listed herein.

25. Defendant, John/Jane Doe Employees/Owners of SMG Worldwide Entertainment & Convention Venue Management  (hereafter referred to as Sands Casino & Event Center), are any owners or employees of Sands Casino later identified as defendants and are not listed herein.

26. The claims asserted against each defendant is being asserted against them individually, and in their official capacity.

**IV.    Relevant Product Market;**

27. The product market that is the basis of the instant suit is the market of mixed martial arts events.

28. A mixed martial arts event is a combat sports competition that is comprised of two individuals fighting inside of an elevated fence enclosure area in front of a crowd of spectators.

29. Both plaintiff's mixed martial arts events and the events hosted by the Casino

Defendants names in this suit, exist in this market.

## V.    Relevant Geographic Market;

30.    The relevant geographic market as it pertains to the instant suit is the
Eastern Pennsylvania Region that surrounds the Essential Casino Venues in question.

31.    This region is comprised of King of Prussia, Chester, Philadelphia, Bensalem and
Bethlehem, Pennsylvania as well as the nearby areas surrounding these same counties.

32.    Plaintiff's geographic market is located in the Eastern Pennsylvania Region.

33.    All of the Casino Defendants casinos are located within the Eastern Pensylvania
Region.

34.    All of the antitrust conduct that gives rise to the instant claims against all of the
defendants occurred in the Eastern Pennsylvania Region.

## VI.    Facts;

35.    Plaintiff filed a civil action against Valley Forge Casino, Harrahs Casino, Cage
Fury Fighting Championships, Xtreme Fight Events and various employees and officials of
those companies in the United States District Court for the Eastern District of Pennsylvania
on September 8, 2014. (Xtreme Caged Combat, et al. v. Cage Fury Fighting Championships, et
al. case #14-5159)

36.    The causes of action asserted in the complaint were pursued under the Sherman
& Clayton Antitrust Acts and included counts for Attempted Monopolization, Refusal to Deal and
Essential Facility Doctrine violations.

37.    The suit in question involved an illegal monopoly over the production of mixed
martial arts events in all of the casinos in Pennsylvania who had the ability to host such events.
The casinos involved in this monopoly were Harrah's Casino, Valley Forge Casino and

Sands Casino. (A casino who was not named as a defendant in the initial litigation.)

38.     This monopoly was procured by David Feldman (formerly of Xtreme Fight Events and Cage Fury Fighting Championships) who had gained serious influence over these casinos through various bribes paid to casino officials.

39.     Plaintiff filed the antitrust suit in question in an attempt to secure fair access into these casino facilities for his mixed martial arts promotion, Xtreme Caged Combat.

40.     Defendant Robert Haydak (of Cage Fury Fighting Championships) provided plaintiff with a sworn affidavit in that case testifying to the validity of all of the claims set forth in his complaint **(Exhibit A)** and every party in the suit ended up settling with plaintiff. However, the settlement terms in question did not allow plaintiff access into the defendant casinos to do his mixed martial arts events.

41.     The claims raised in the instant complaint involves interstate commerce and numerous fighters, employees and customers (ticket buyers) from Pennsylvania, New Jersey, New York, Maryland, Delaware, Ohio, Virginia and beyond.

42.     All of the Pennsylvania Casinos, acting in concert with one another, are now boycotting plaintiff from being able to promote his mixed martial arts events at all of their casinos as punishment for filing the antitrust suit he filed against Harrah's Casino and Valley Forge Casino. These casinos include Sands Casino & Event Center, Sugarhouse Casino and Parx Casino, all of whom were not named as defendants in the initial suit on account of Sands being located outside of the Philadelphia Market and Sugarhouse and Parx not yet having event areas that could accommodate mixed martial arts events.

43.     All of the casinos named as defendants in this suit are direct competitors with one another on the same level of commercial distribution, and the concerted actions in question are horizontal, giving rise to *per se* liability. The relevant facts regarding each casinos involvement in the boycott is broken down into 3 separate sections below. (1 for each casino)

## SANDS CASINO & EVENT CENTER

44.    Matt Salkowski, the Director of Entertainment at Sands Casino & Event Center, (non defendants in the initial antitrust litigation), allowed plaintiff access into the Sands Casino & Event Center to do his mixed martial arts events subsequent to him filing his initial antitrust suit. Salkowski was involved in the casino monopoly in question as a result of bribes paid to him by David Feldman. He allowed plaintiff access into the facility to avoid having himself and Sands Casino & Event Center named as defendants in a future suit after Plaintiff expressed his intent to do so for the antitrust violations they were involved in.

45.    However, this access was only granted on account of both Salkowski's and Sands Casino's belief that plaintiff would fail to produce an adequate enough attendance to justify being given a second event at the Casino. Their plan was to let plaintiff do one show, have him fail and prevent him from ever coming back again while protecting themselves from future litigation on account of the access they had granted him. This plot was divulged to numerous people in the mma industry by David Feldman himself, who was still doing mma events at Sands Casino at the time as X-Fights and also doing boxing there as Kings Promotions.

46.    Salkowski's and Sands' belief that plaintiff's event at Sands' would fail was based on 3 factors. 1) Because, they were giving plaintiff less than half of the site fee/ticket buy that they had given out for previous mma events at the casino ($7,500 instead of the $20,000 that was given to CFFC), 2) they were charging him a higher per ticket fee ($8.00 instead of the $4.50 that was charged to CFFC) and 3) they believed that David Feldman's influence with the local fight camps in the Sands Casino area, which he obtained from doing mma and boxing events at Sands over the years, would allow him to prevent plaintiff from being able to procure enough fighters to fill a full card or enough local ticket selling fighters for a successful event.

47.     However, despite Feldman's attempts to have his fight gyms not fight for plaintiff, and despite having a worse financial deal than what Feldman had procured in the past, plaintiff sold out the Sands Casino Event Center his very first show there and the recorded attendance (1,139) surpassed the maximum sell out capacity the Center indicated it could hold. (1,080)

48.     Nonetheless, Matt Salkowski informed plaintiff after the event, that Sands Casino would no longer give out any site fee/ticket buys because the mma events did not make the casino any money on the casino floor. This statement was a lie, and was the next step in trying to get rid of plaintiff without outright denying him access to do his events there.

49.     Plaintiff called him out on this ploy, and Salkowski subsequently told Plaintiff  he could do a second show at Sands under the same deal as the first event. However, Sands Casino would not not make good on that promise and plaintiff ended up doing his second event at Sands with no site fee/ticket buy.

50.     Plaintiff moved forward with the second event under the subsequently diminished terms and once again had a successful event with recorded attendance of 896.

51.     Matt Salkowski was then forced to resign the day after plaintiff's second event at Sands Casino and Event Center for letting plaintiff do his second event at Sands. On a Sunday……. That day was the last time plaintiff and Salkowski spoke.

52.     Salkowski clearly needed to obtain permission from Sands Casino (who defendants will claim is a separate distinct entity from Sands Casino itself) in order to allow plaintiff to do an event at the Event Center as evidenced in an email Salkowski sent to Plaintiff on May 2, 2016 which stated "I have an ask into the casino to see what they want to do after the June date no other dates have been confirmed except the June date" after plaintiff once again inquired as to whether he would be able to do another mma event there. The June date referenced in that email was David Feldman's second X Fights MMA event at the Casino.

53.     James Hines replaced Matt Salkowski after his resignation and became the

General Manager of Sands Bethlehem Event Center.

54.     Plaintiff eventually spoke to Mr. Hines, 2 months after his second mma event at Sands Casino and inquired about doing more mma events there.

55.     However, Mr. Hines offered plaintiff new terms that were far removed from those that were previously offered to plaintiff, much like the change in terms between plaintiff's first mma event at Sands and the second event he did there. Those terms were a $6,500.00  (Sixty Five Hundred Dollar) rental fee, a $5.00 per ticket charge. This deal also did not include previously included terms such as 21 hotel rooms for 2 nights, security and set up, and a $40.00 per day food occupancy (based on double occupancy) per hotel room provided.

56.     The intent behind Mr. Hines' new terms was to make it unprofitable for plaintiff to do an event there, forcing him to decline the offer so that the Casino and Event Center could later claim that they did not deny plaintiff access to do his mma events at the event center.

57.     Plaintiff had no choice but to reject the modified terms that were offered to him by Mr. Hines so that he would not lose money on a future event there.

58.     It is worthy of note, that this very same tactic was used by Valley Forge Casino in the initial antitrust litigation where they chased plaintiff away with a $10,000.00 (Ten Thousand Dollar) rental fee and then provided Feldman (CFFC) a free venue, a $20,000.00 (Twenty Thousand Dollar) site fee/ticket buy, 21 free hotel rooms for 2 nights, free food comps per hotel room, etc…..

59.     No MMA events have taken place at Sands Casino since plaintiff's last event there because the casino drove up the rental fees for mma events there so high that doing an event there would not be profitable. This increase in rental fees was done to keep plaintiff out of the Casino and no competing promotions have agreed to such inflated terms either.

60.     However, boxing events, which bring in much smaller crowds than the mma events at Sands Casino, are still taking place there till this very day. David Feldman, the

monopolist in the initial antitrust litigation, promotes those boxing events with his partner

Marshall Kaufman and, upon information and belief, those boxing events are still given a free

venue, site fee/ticket buy, free hotel rooms, food comps, etc.....

## SUGARHOUSE CASINO

61.     On October 27, 2015, plaintiff reached out to Sugarhouse Casino and

approached them about being given access to the soon to be built Casino Event Center to do

his Xtreme Caged Combat mixed martial arts events.

62.     Plaintiff was directed to speak to two different employees of Sugarhouse Casino

event center. Those two individuals were Julia Spieler and Erika Joy Erb.

63.     Initially, both Erika and Julia were very interested in having plaintiff conduct his

mma events at Sugarhouse Casino. Both of them had agreed to allow plaintiff access into

Sugarhouse to do his events immediately after the event center opened in March of 2016 and

the only thing that needed to be worked out was the contractual details.

64.     At Erika's request, plaintiff even submitted a written event proposal that included

a few different event packages that her and plaintiff had discussed over the phone and

addressed some of the questions she had regarding the events.

65.     However, after plaintiff submitted his proposal, Erika spoke to the "VP of

Marketing" at Sugarhouse Casino and after having a conversation with her, Sugarhouse

Casino was no longer interested in allowing Xtreme Caged Combat to do its events there after

the event center opened. The exact wording contained in the email reads as follows (Dated

November 6, 2015):

> Hi Ryan,
>
> Thanks for putting together such a detailed proposal. I appreciate that you
> addressed all my questions and provided multiple options.

> **I had a chance to talk with my VP of Marketing** and while we are very interested in forming a relationship with you, the timing is just not right. The space is not yet complete and once it opens, we still need to get a handle on how it will operate, layouts, entertainment needs etc.
>
> At this time, we're going to have to pass. Please reach back out in June and let's talk about hosting an event in Fall 2016. We wouldn't sign a five event agreement but we would be open to hosting one to see how it goes once we know our space better.
>
> Many thanks,
>
> Erika

66.     The Vice President of Marketing at Sugarhouse Casino, to which Erika referenced in her email, is Linda Powers.

67.     For months plaintiff continued to contact Sugarhouse about the Fall event he was told he would be permitted to do at the casino and for months he was given the run around.

68.     Plaintiff was not even permitted to go to Sugarhouse and "look" at the event center. He had asked to but had this request ignored.

69.     On May 9, 2016, Erika eventually stated that Sugarhouse had no interest in committing to any dates for Xtreme Caged Combat in 2016 despite several prior emails pretending to be open about XCC doing an event there in the Fall of 2016.

70.     Despite Sugarhouse Casino's feigned disinterest in hosting combat sports events at its casino, Sugarhouse booked a boxing event to take place at the Casino on August 26, 2016. This event was put together by Hard Hitting Promotions.

71.     On July 20, 2016, XCC matchmaker Helen Locura emailed Erika Joy Erb about this boxing event and even asked if her and plaintiff would be given access to Sugarhouse casino to do a boxing event. The following conversation ensued:

> Good Morning!

I see that a boxing event has been scheduled at the Sugar House
Event Center.  Can you please let me know what dates are available to hold an
event and terms available as well?

Thank you! :)

72.     Erika did not respond to that email.

73.     Helen sent another follow up email to Erika on July 27, 2016 and the following

conversation ensued:

**Helen (7/27/16):**

Hi Erika!
I am just following up on the email sent last week that I have not heard back on.
If you can please let me know what dates are available at the event center now
since it has been opened up to boxing that would be great.

Thank you!

**Erika (7/28/16):**

Hi Helen,

At this time, we aren't interested in hosting cage fighting but I'll be in touch if
anything changes.

**Helen (7/28/16):**

OK, well we would be interested in doing a boxing event at the Sugar House
Casino.  Can you please let me know what dates are available and the terms
given to the promoter for the Aug event?

Thank you.

**Erika (7/29/16):**

We are still testing out our involvement with boxing events and are not ready to
commit to anymore at this time. We will reach out once we internally discuss our
future involvement with the sport. Thanks!

74.     In the July 29, 2016 response to Helen, Erika lied about Sugarhouse not being

ready to commit to any more boxing events at that time.

75.     On June 15, 2016, plaintiff emailed the Pennsylvania State Athletic

Commissioner Greg Sirb asking what dates where still available to book for an event in the

months of October and November. Mr. Sirb's emailed response was:

Oct-14 – Oct-21 – Oct-29

Nov-11-Nov 12 or Nov-18

76.     Mr. Sirb was once again emailed on July 18, 2016 asking what dates were still available to be booked in the months of October and November. His emailed response was:

Oct-15 – Oct-21

Nov-11-Nov 12 or Nov-18

77.     Both boxing promoters and mixed martial arts promoters choose from the same set of available dates with the Pennsylvania State Athletic Commission.

78.      Hard Hitting Promotions subsequently held its second boxing event at Sugarhouse Casino on October 28, 2016.

79.     That means Hard Hitting Promotions booked that event at the Sugarhouse with the State Athletic Commission prior to June 15, 2016 because at no time after that date was October 28, 2016 available and on July 29, 2016 Erika Joy Erb said that Sugarhouse was not ready to commit to any more boxing events at that time.

80.     Hard Hitting Promotions even announced the October 28, 2016 event at Sugarhouse on its Facebook on August 28, 2016. This was only 2 days after the August 26th event and on a Sunday which would have made it impossible for them to book after the August 26th event.

81.     After the Hard Hitting Promotions event, plaintiff reached out to their ring announcer Pat Fattore to see if he could help get him in front of any Sugarhouse Casino officials who could give him access to the event center. Mr. Fattore is also the ring announcer for Xtreme Caged Combat.

82.     Mr. Fattore said that he could help. He informed Plaintiff he would call over to an individual employed by the casino that he met from working with Hard Hitting Promotions named

Jules Vorndran. Mr. Vorndran is a Vice President of Marketing & Casino Operations at Sugarhouse Casino.

83.    After speaking to Mr. Vorndran, Mr. Fattore called Plaintiff and told him that Mr. Vorndran said that Sugarhouse would be delighted to have Xtreme Caged Combat do its events at the casino and gave Plaintiff Mr. Vorndran's cell phone number so that he could give him a call about the details.

84.    Plaintiff then called Mr. Vorndran on his cell phone ((267-315-1268) on Thursday, September 1, 2016.

85.    During that call, Mr. Vorndran told plaintiff that he would be delighted to have Xtreme Caged Combat do its events there and said that he would schedule a meeting for plaintiff to come up to Sugarhouse Casino to tour the event center and discuss contractual details on either Monday or Tuesday (September 5 or 6, 2016).

86.    However, Exactly 1 hour and 9 minutes after hanging up from that call, Mr. Vorndran called plaintiff back and left a voicemail that stated the following:

> "Hey Ryan its Jules, its about 12:30 from Sugarhouse. I just wanted to circle back with you, I got on the, **I had a conversation with Linda** and we're gonna explore the mma right after the 1st of the year, so, um, I just wanted to reach out to you, just kinda give you a heads up. You won't hear from us until after the 1st of the year. We want to kinda, um, get this boxing thing going and then we already had the event center kinda locked up with some stuff, um, throughout the end of the year. And um, but a, you'll hear from me right after January. Thank you. See ya Pal. Any questions give me a call back. Bye."

87.    Plaintiff called Mr. Vorndran back after hearing that email and was told much of the same.

88.    It was only after speaking to "Linda", that Mr. Vorndran did a complete 180 and informed plaintiff that he would not be able to do his events there in 2016, that the event center was completely full, that he could no longer come up and see the event center, that there would be no contractual discussions, etc…… Plaintiff could not even discuss 2017 dates or the

contractual terms that would be afforded to him for a 2017 event date. Every promise he had

made to plaintiff only an hour earlier on the telephone was completely reneged.

89.     The individual Mr. Vorndran spoke to and identified as "Linda" in the voicemail is

the same person Erika spoke to that she identified as "the VP of Marketing" in her email. Linda

Powers, the Vice President of Marketing at Sugarhouse. Both Mr. Vorndran and

Erika were both ready to give plaintiff access to do events at Sugarhouse Casino until speaking

with Linda Powers.

90.     After speaking with Mr. Vorndran, Plaintiff sent the following email to Julia Spieler

and Erika Joy Erb informing them of his intention to file a lawsuit against Sugarhouse Casino:

> Your refusal to respond to my email was expected. We both know what is going
> on here (and what has been going on) and I'm beyond tired of making attempts
> to gain access into the Sugarhouse Casino to do my events. I'm being blocked
> once again and nothing is going to change that without court intervention. It may
> be a week or two but the next time Sugarhouse will hear from me will be in the
> form of a lawsuit. You are obviously well aware of the previous suit so all of us
> know this is not a bluff. Feel free to forward this to any of your higher ups, your
> legal department and Mr. Van Dron. I made every possible attempt to build a
> mutually beneficial arrangement that would have been profitable for both parties.
> My options are clearly exhausted. (Dated September 1, 2016)

91.     The initial email plaintiff references in the preceding paragraph/email was sent to

Julia and Erika two days prior, on August 30, 2016, and read as follows:

> You have now hosted a successful boxing event at the Sugarhouse Casino in the
> very month I was told I would be permitted to do an MMA event in almost a year
> prior. You have now seen that combat sports is an extremely lucrative event to
> have at the casino and you have already rebooked Hard Hitting promotions for
> October 28th. Xtreme Caged Combat is a much more established and successful
> promotion than Hard Hitting Promotions. Despite this fact, they were permitted
> access to do a show at your casino and I was not. I average more people per
> event and I am in the process of preparing to do my 27th combat sports event in
> November (26 mma and 1 muay thai). The boxing promotion you just had in
> there has only done 3 events to date. All of the pretexts you have given me for
> not allowing me to do my mma events at the casino have now been proven to be
> invalid.
>
> Now that you cannot tell me that combat sports is not the type of event that the
> casino is interested in, and you are satisfied enough with a less established
> combat sports promotion to bring them back only 2 months after their first show,

it is time to revist Xtreme Caged Combat being permitted access into the casino to do an event. Are you going to allow me to do my mma events at the casino? I do not see any issue with me pulling in the same attendance as the one Hard Hitting Promotions show you just had at the casino under the same deal you gave them. Attached is the attendance from the last Casino event I did in April of this year. As you can see, I had a paid attendance of 1,136 and after comps, staff, fighters, cornermen, etc.... there was well in excess of 1,200 people in attendance that night. Boxing events and MMA events have the same run time which is 1 hour for the doors and normally a 3 to 3 1/2 for the event. The difference is, the crowd that watches mma is a much wealthier demographic that would spend more money on concessions and gambling.

Before I elaborate further, is the casino ready to discuss me being permitted to come do an XCC mma event at the Sugarhouse Casino? (Dated August 30, 2016)

92.     An hour and 18 minutes after Plaintiff sent Erika and Julia the email indicating his

intention to sue Sugarhouse Casino on September 1, 2016, Erika called Plaintiff from (267)

687-4476 and the following conversation ensued:

> **Plaintiff:**   Hello.
>
> **Erika:**   Hi Ryan, this is Erika. You don't need to speak, you can just listen. First of all, I have much more important things to worry about then responding to your email ……………………………………………….
> ……………………………………………………………………………….
> Now, no matter what you say or do, Sugarhouse is never going to let you in here. If it wasn't for you we would have had mma events here long ago. You filed that lawsuit, now live with it. Now have a nice day. (Immediately hung up.)

93.     The statements made by Erika during that phone call are irrefutable proof as to

Sugarhouse Casino's motives for denying plaintiff access into the casino to do his events.

94.     It is also worthy of note, that Wendy Hamilton, the General Manager in charge of

Sugarhouse Casino, was an employee of Harrah's Entertainment from 1999 to 2006. Harrah's

Casino in Chester Pennsylvania was one of the casinos plaintiff sued in his federal antitrust suit.

95.     Sugarhouse Casino has continued to allow Hard Hitting Promotions to do boxing

events at the casino. It has also, allowed David Feldman (the monopolist in the initial antitrust

suit) to promote boxing events there as Kings Promotions and has already hosted 2 King of the

Cage MMA events there.

96.     The owner of King of the Cage informed plaintiff that his deal with the casino involves a free venue, a $15,000.00 (Fifteen Thousand Dollar) site fee/ticket buy and 21 hotel rooms paid for by the casino for two nights at a near by hotel.

97.     Plaintiff agreed to do events at Sugarhouse Casino under much more profitable terms for the casino than the terms it agreed to with King of the Cage. In the proposal plaintiff emailed Sugarhouse, he agreed to do events there in exchange for a free venue only and would have pulled in a much larger crowd for the casino than King of the Cage. In subsequent phone calls placed to the casino by Helen Locura, it was even stated that plaintiff would pay a rental fee for access to do his mma events at the casino. This proposal was of course ignored.

98.     The attendance at the first King of the Cage event at Sugarhouse was so bad that it agreed to terms with David Feldman (the monopolist in the initial antitrust suit) for him to do an mma event there under Art of War Cagefighting in November of 2017. Art of War (A Mixed Martial Arts Promotion headed by David Feldman and Mike Bickings) had only done 2 events prior to being able to gain access into Sugarhouse Casino. Plaintiff had already promoted 29 mma event prior to November of 2017, 17 of which were in Philadelphia (The city Sugarhouse is located in) but he was denied access.

99.     However, Feldman and Art of War were ultimately prevented from doing their November 2017 event at Sugarhouse because King of the Cage enforced an exclusivity clause in its contract with the casino that prevented the Art of War event from taking place. This clause was included in King of the Cage's contract to create a pretext for not allowing more than one mma promotion to do shows at the casino at one time, namely, plaintiff's promotion.

100.     It is also worthy of note, that Feldman's Art of War promotion obtained access into Harrah's Casino to do its 2nd mma event prior to Art of War ever even hosting its 1st mma event. This is extremely relevant considering the fact that Harrah's did not have any mma

events at the casino since discontinuing them during plaintiff's initial antitrust suit. Plaintiff offered to drop his suit against Harrah's in exchange for permission to conduct his mma events at the casino but Harrah's contended it did not want mma back because it was not profitable. The same pretext that was used by both Valley Forge Casino and Sands Casino, but only after plaintiff had filed the initial antitrust suit.

## PARX CASINO

101.    On May 6, 2017, plaintiff emailed Helmut Perzi, the Director of Entertainment at Parx Casino inquiring about Parx allowing him to do his XCC mma events at the Casino's soon to be opened event center.

102.    Perzi is in charge of booking the entertainment for the soon to be open Xcite Event Center at Parx Casino

103.    Parx Casino, is 3.8 miles from the National Guard Armory in Philadelphia, Pennsylvania. The Armory, is the primary venue that plaintiff has promoted his mma events at over the last 8+ years and he has done 16 of his 29 events there, with his 17th event there scheduled for February 3, 2018.

104.    Perzi responded to plaintiff's initial email regarding mma events at Parx 2 days after plaintiff sent it and stated that he would review the Xtreme Caged Combat website and set up a call with plaintiff shortly thereafter.

105.    No call followed, and plaintiff proceeded to check back in with Perzi about the call via email, twice over the next two weeks.

106.    Plaintiff and Perzi eventually spoke over the phone on May 22, 2017.

107.    Plaintiff then followed up with that conversation later the same day via email and reiterated his proposal for the mma events he wanted to do at Parx. In short, he offered to do an

event there in exchange for a free venue, but, agreed to "beat any proposal any other promotion gave Parx to do his events there." He further agreed to give them a guaranteed minimum event attendance of 800 people.

108.    Perzi indicated he would review the proposal over the weekend.

109.    Plaintiff did not hear back from Perzi for the next 12 days so he sent him another email on June 4, 2017 to ask him if he had reviewed the proposal. Perzi responded the next day and said that he had not.

110.    Another 22 days passed with no reply so plaintiff once again emailed Perzi on June 27, 2017 to ask if he had reviewed the proposal. Perzi responded and said that he was still reviewing Parx's options.

111.    20 days later, on July 17, 2017, Perzi emailed plaintiff and stated that part was still reviewing its options.

112.    Plaintiff knew that he would be boycotted by Parx Casino and be prevented from ever being able to promote an event there prior to ever contacting Perzi. He was told this to his face by Rob Haydak of Cage Fury Fighting Championships at the Borgata Casino on October 28, 2016 during a meeting between the two.

113.    Haydak also informed plaintiff at that meeting that he had already agreed to terms with Parx Casino for CFFC to do events there and that the deal they were to have in place would entail a free venue and a $25,000.00 site fee/ticket buy.

114.    The reason Haydak asked plaintiff to meet with him at the Borgata on that day was to discuss plaintiff selling his company to Alliance MMA and secretly running the events at Parx Casino under the CFFC brand. However, no deal was reached.

115.    Alliance MMA is the parent company of CFFC and Rob Haydak is also the President and a majority shareholder of Alliance MMA.

116.    It is common knowledge in the Pennsylvania and New Jersey mixed martial arts

community that plaintiff is being boycotted from being able to promote his mma events at every one of the casinos.

117.    Having this knowledge, being privy to the statements Haydak made to him about the casino boycotting him and after watching Perzi continue to be evasive in their dealings over the past 2 months, plaintiff sent the following email to try and press a documented response.

May I ask what options you are looking at? **I offered to beat any offer any other mma promoter may offer. I offered to guaruntee attendance.** I run the longest running promotion in the State's history. I have done shows only 3 miles down the road from Parx for over 6 of the 8 1/2 years Ive been in operation. My entire staff and gym base is located directly within the target area. No other promotion can bring you a larger attendance, comes close to being around as long as my promotion, has done shows anywhere near as close to Parx then I have, let alone for as long as I have, and no other promotion has their main staff and gym base located within Parx general region. Furthermore, most mma promotions are not even profitable and 90% of the market goes out of business within 2-3 years if not sooner. Cage Fury Fighting Championships, for example, is owned by a corporation whose financial losses are so bad that its stock has dropped from $4.50 a share to as low as $0.85 a share (currently $1.02 at the time of this email) since the company went public last October. Please tell me what, among these points, has you considering other options or what other options you are considering. XCC is by far the most established  and consistent mma promotion in the entire Philadelphia region. **This repeated refusal to address me doing mma events at Parx is pretty confusing to me especially since I could not care less if another competing promotion was granted access to do shows at Parx as long as my deal at the casino was no worse than whatever other promotion was doing shows there.**

It all boils down to this. You admitted Parx wants mma at the casino and you want those shows to be financially successful for the casino. **I offered to do mma events at the casino and guaruntee numbers that would be financially successful for the casino. I agreed to do that while beating any deal any other potential competitor would agree to. What is stated in the facts contained in this final paragraph that is causing you pause to allow me to do my mma events at the casino?**

118.    Perzi responded with the following email:

Hi Ryan,

We are looking at multiple options and one of them does include CFFC. We are doing a lot of things right now including just starting to have the ability to lock holds into our calendar.

In many ways, I appreciate the email below, but I also find it to be unprofessional which concerns me. I have by no means been giving you continued repeating refusals, but rather stated that we are taking the time to look at all our options.

I sent an email to you this morning to keep you in the loop. We are continuing to work on building our new venue and we will make a decision on whom we would like to work with in the near future.

I have no problem meeting as well so you can address your company comparatively.

Let me know if you have some time in the next coming weeks.

119.   Plaintiff responded to Perzi's email with the following:

I know you have been talking to CFFC. I wanted you to say it and I didn't just mention them by happenstance. The individuals running CFFC met with me at the Borgata Casino last October and told me right to my face that they had been talking to Parx Casino during a meeting they scheduled with me to discuss me selling my company to Alliance MMA and secretly matching and running the Parx events under the CFFC banner. This was of course, before you and I ever spoke. They admitted right to my face that Parx Casino would deny me access to the casino under all circumstances on account of the antitrust suit I filed against the other casinos. That antitrust suit was based on me being bribed out of access to the casinos in Pennsylvania and a state wide casino monopoly and as you well know, that suit involved CFFC who was named as a defendant. The owner of CFFC even gave testimony in that case admitting to the validity of all of the claims raised in my complaint. (The Sands Casino access I obtained last year was granted to avoid suit and after putting together the most successful mma show the casino had ever had my very first event there, I was immediately told that MMA was no longer profitable after years of them doing mma with the monopolist who was involved in the antitrust suit. The history that followed is not for this conversation but it is worthy of note that my attendance destroyed the attendance that CFFC and even World Series of Fighting had at the very same venue.)

**I know that I will not be permitted to do a show at Parx under any circumstances. I have known this from the outset. I offered to beat any deal you were offered by any potential competitor while guarunteeing performance and you are exploring other options that would be less favorable to the casino.......... why?** Regardless, I will meet to discuss things whenever you like. Name the day and time and I will be there. I will do whatever you ask until I am granted access to do my events at the casino or it is officially admitted that I will not be permitted to do my events there. You don't want XCC to be the name of the promotion on account of the antitrust suit? Tell me what name you want me to promote under. How about Ring of Combat? I'll reach out to them and do my events under that name. Or any other name you would like. This isn't sarcasm, I'm dead serious. The success of the show will ensue based on my involvement, not the name under which the show is promoted. If that wasnt the case CFFC/Alliance MMA wouldn't have tried to buy me out to do the Parx events for them.

Parx Casino is the last remaining casino available that has not yet blocked me from doing shows. Once this casino boycott is complete, it is going to cost me my business, my livelihood and my home. My daughter is 2 1/2 years old and her mother makes almost nothing. They need my income to support them and I cant continue to succeed in the Philadelphia Region while being the only promotion in the region not to have a casino and even more importantly, a casino deal which involves free venues, ticket buys, etc.... Keep in mind, we are talking about the longest running promotion in Philadelphia after countless promotions in the same region have all went out of business. I have outperformed and outlasted them all but I cannot simultaneously compete with 3 Philadelphia area casinos from a non casino venue. **You want to put CFFC in Parx I could not care less. What does that have to do with denying me access? I have no problem doing shows there at the same time, under the same deal, and I will guaruntee that my attendance numbers exceed theirs. I also told you I would outbid them for the contract. There is no legitimate business reason to keep me out.**

Like I said, I can meet on any day at any time you choose. Just tell me when and where. If you are going to tell me instead that you are officially not allowing me to do my events at Parx Casino, simply state as much.

120.    Perzi subsequently agreed to meet with plaintiff and the two met at Parx Casino on August 1, 2017.

121.    During that meeting Perzi informed plaintiff that Parx would not give up a free venue or a site fee/ticket buy like the other casinos if plaintiff was to do an event there. Perzi stated that there would be a $3,000.00 rental fee and the casino would require plaintiff to give the casino 100 free tickets for the event.

122.    Plaintiff did not believe this was the deal that Parx would ultimately give CFFC, or any other combat sports promotion to do events at the casino, but it was still better than his current venue deal and he knew even if he said yes to the terms the casino would still prevent him from doing his events there.

123.    As a result, plaintiff emailed Perzi subsequent to that meeting agreeing to the casino's terms through documented means. However, he didn't just say yes to the casino's terms, he one upped them, offering 200 free tickets to the casino instead of 100.

124.    Lacking any legitimate business reason to deny plaintiff the ability to do his mma events at Parx at that point, Perzi responded to that email with implied pretexts for which he

likely intended/intends to use as an excuse for denying plaintiff access to Parx. His response

read as follows:

> Ryan,
>
> It was nice meeting you. I will review your proposal shortly. Please feel free to send the affidavit to me as well, if you are OK with that so I can understand better what is going on. As we discussed, we make our decisions based on what is best for Parx and the events we would like to have here. **All of our decisions are not always about the best financials, but with whom we are comfortable working with and we find synergy with to be successful together.**

125.    This would not be the last implied pretext Perzi would email plaintiff in regards to

obtaining access to Parx. 25 days after the above email, on August 25, 2017, Perzi stated the

following after plaintiff checked in about his proposal:

> Not yet, **trying to make labor work on this** and we have to use our union at the moment.

126.    24 days after that email, on September 18, 2017, Perzi sent the following email in

response to another one of plaintiff's inquiries on the status of things.

> Not yet. **Still working out labor and the numbers.** I will let you know either way when it's time. We have not confirmed with any MMA promoter at this time.

127.    16 days later, on October 4, 2017, plaintiff sent another email to inquire about the

status of things. He received no reply.

128.    15 days after that, on October 19, 2017, plaintiff once again sent an email

inquiring about the status of things. He would not receive a reply from Perzi until 26 days later,

on November 14, 2017.

129.    Perzi responded with the following email:

> Ryan,
>
> I wanted to get back to you.
>
> We have narrowed it down to 2 companies for MMA. We appreciate your proposal, but at this time, we will plan on working with another promoter. Let me know if you have any questions and good luck on any future endeavors.

130.    That was the last communication between plaintiff and Perzi.

131.    Haydak and CFFC will now move forward with doing their mma events at Parx Casino's Event Center.

**VII.    Causes of Action;**

## COUNT 1

### Horizontal Group Boycott - Sherman Act 15 U.S.C. § 1

132.    Parx Casino, Sugarhouse Casino and Sands Casino and Event Center, control facilities that host events in plaintiff's product market and regional market that he requires access to in order to remain a viable competitor in his commercial industry.

133.    Parx Casino, Sugarhouse Casino, Sands Casino and Event Center, their owners, and Defendants James Hines, Helmut Perzi, Erika Joy Erb, Julia Spieler, Jules Vorn Dran and Linda Powers collectively entered into a conspiracy to boycott plaintiff and his mixed martial arts promotion Xtreme Caged Combat from being permitted the ability to promote his mma events inside the casino defendant's venues.

134.    Parx Casino, Sugarhouse Casino and Sands Casino and Event Center, as well as their owners and employees, are direct competitors with one another, and the conspiracy entered into between these parties is horizontal.

135.    This horizontal conspiracy is a per se antitrust violation.

136.    Parx Casino, Sugarhouse Casino and Sands Casino and Event Center, and their owners and employees, have no legitimate business reason for not allowing plaintiff and XCC the ability to promote his mma events at their casino venues and under fair and reasonable terms.

137.    Parx Casino, Sugarhouse Casino and Sands Casino and Event Center's, and their owners and employees, refusal to allow plaintiff access into the casino venues to do his

mma events and under fair and reasonable terms has no purpose except to stifle competition.

138.    Parx Casino, Sugarhouse Casino and Sands Casino and Event Center, and their owners and employees, had a unity of purpose and a common design and understanding amongst and between one another to boycott plaintiff and his mma promotion form the casino venues as punishment for filing his antitrust suit against Harrah's and Valley Forge Casino.

139.    This boycott will result in plaintiff being put out of business, as he will be unable to compete with the mma promotions promoting events at Sugarhouse Casino, and Parx Casino.

140.    The casino deals mentioned in this complaint ($15,000 and a free venue, etc…. for Sugarhouse and $25,000 and a free venue for Parx, etc….) gives the mma promotions doing events at those casinos a huge financial advantage of plaintiff and any other competitors who would attempt to enter the market. Plaintiff, pays roughly $3,300.00 to rent his venue and incurs multiple additional costs related thereto that he would not have to incur at a casino.

141. These casino venues are far superior to the venue(s) that plaintiff does his events at or is capable of doing his events at in the relevant market.

142.    These casino venues allow whatever mma promotions that do events in them to attract the "ticket selling" fighters to fight on their shows instead of plaintiffs' or any other potential competitors shows who do not have the ability to promote their events at a casino. This inflates their profitability even more and hurts plaintiffs and any other potential competitors in the market tremendously.

143.    A regional mma promotion cannot profit or stay in business without attracting the ticket selling fighters to fight on their events.

### COUNT 2

**Essential Facilities Doctrine Violation - Sherman Act 15 U.S.C. § 1 & 2**

144.    Defendants Parx Casino, Sugarhouse Casino and Sands Casino and Event

Center, along with previously named defendants Valley Forge Casino Resort and Harrahs Casino comprise an Oligopoly and a Collective Monopoly, and they control 100% of the relevant casino event market relevant to this complaint.

145. These same Casino defendants, by way of their Oligopoly and Collective Monopoly, are Monopolists.

146.    These Casinos are the only Casinos from Central to Eastern Pennsylvania that have hosted mma events, or are capable of hosting them.

147.    This Collective Casino Monopoly and Oligopoly has superior market power in the mixed martial arts event industry by way of their essential facilities that host such events.

148.    Mixed Martial Arts events in the Central to Eastern Region of Pennsylvania cannot be economically produced without using the essential casino venues. Failure to have access to these venues not only results in lower economic feasibility as far as venue price and perks but prevents these promotions from obtaining the services of the ticket selling fighters that are necessary to fund the shows because these very fighters will opt to fight for the promotion located in these casinos and not in the promotions who do shows outside of these casinos.

149.    Without plaintiff having access to these casinos and their lucrative financial deals he is not able to financially compete with whatever mma promotion is able to put on mma events in these casinos. He could easily do so if he had access to such venues and financial deals.

150.    MMA Organizations like CFFC and King of the Cage can not sustain profitability in the Philadelphia, Pennsylvania Region without the free venue deals and cash payouts that they are and were given at these casinos. CFFC has admitted to this financial reality **(Exhibit A, paragraph 44)** and King of the Cage does 90% (or higher) of its shows across the United States in Casinos.

151.    Parx Casino, Sugarhouse Casino and Sands Casino and Event Center, and their owners and employees,, working in concert with one another, have conspired to boycott plaintiff's mma events and to deny him access to their casinos as punishment for filing his initial

Antitrust suit against the two previously named casino defendants, Valley Forge Casino Resort and Harrah's Casino.

152.    This conspiracy is horizontal, and involves parties who are direct competitors with one another.

153.    The defendants have no justifiable business reason for the denying plaintiff access to these venues. Rather, allowing plaintiff access to do his mma events at the casino would financially benefit these casinos in the same way they benefit from allowing the other mma promotions to do events there.

154.    There is no regulatory oversight being conducted or is capable of being conducted from any agency that could compel the defendant casinos to allow plaintiffs and their business access to host their mma events there.

155.    Plaintiff cannot duplicate these casino facilities.

**VIII.    Relief Requested;**

156.    Compensatory/Actual damages against the defendants, jointly and severly, in an amount in excess of $500,000 (Five Hundred Thousand Dollars).

157.    Punitive damages against the defendants, jointly and severly, in an amount in excess of $100,000 (One Hundred Thousand Dollars).

158.    Statutory trebling of any Compensatory/Actual damages awarded in this case. (Both past and future damages).

159.    The opportunity to contract with Parx Casino, Sands Casino & Event Center and/ or Sugarhouse Casino to conduct Xtreme Caged Combat mma events at the event center of one or all of those casino under the same deal that has been afforded to competing promotions in the past. If no such relief is granted, an additional $500,000.00 (Five Hundred Thousand Dollars) in Compensatory/Actual damages against the defendants, jointly and severly, for future

loss of wages.

160.    Any and all attorneys fees, filing fees, costs or other expenses incurred from the

filing and litigation of the instant complaint.

161.    Any and all prejudgment interest that plaintiff may be entitled to at the end of the

instant litigation.

162.    A trial by jury.

163.    Any other relief that plaintiff is entitled to that is not requested herein.


Respectfully submitted,

*Bryan Kerwin*

Date: 12/12/2017                                    Ryan Kerwin
                                                   Xtreme Caged Combat
                                                   240 Brittany Drive
                                                   Langhorne, PA 19047
                                                   (267) 702 - 8701
                                                   rkerwin@rushielaw.com

.



UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

---

Xtreme Caged Combat, et al.                          Civil Action

       *Plaintiffs,*

    v.                                             Case # 14-5159

Cage Fury Fighting Championships, et al.

       *Defendants,*

---

### SWORN AFFIDAVIT OF ROBERT HAYDAK JR.

1.    I am an owner, member and manager of of CFFC Promotions, LLC, a New Jersey limited liability company.

2.    I formed CFFC Promotions, LLC on January 28, 2014. Prior to forming CFFC Promotions, LLC, I was the President of Hoss Promotions, LLC, a New Jersey limited liability company doing business as "Cage Fury Fighting Championships." After the formation of CFFC Promotions, LLC, I acquired the right to use the trade name "Cage Fury Fighting Championships"; and Hoss Promotions, LLC became inactive.

3.    CFFC Promotions, LLC currently does business as Cage Fury Fighting Championships (hereinafter "CFFC").

4.    CFFC and I are both named defendants in the above captioned matter; and as such I have personal knowledge of the facts and circumstances described herein.

5.    CFFC is in the business of promoting mixed martial arts competitions in the State of New Jersey and Pennsylvania.

6.    I obtained entry into Valley Forge Casino to do CFFC's mixed martial arts events by partnering with David Feldman of Xtreme Fight Events (hereinafter referred to as XFE) in



the late fall of 2012.

7.    I promoted CFFC's mixed martial arts events at Valley Forge Casino Resort (hereinafter referred to as "Valley Forge Casino" under the entity Hoss Promotion and Cage Fury Fighting Championships.

8.    Prior to signing a contract to do CFFC's MMA events at Valley Forge Casino, David Feldman had reached out to me and proposed that the two of us partner together to do mixed martial arts events there.

9.    Mr. Feldman explained to me that he was under contract to promote MMA events at Chester Downs and Marina, LLC (hereinafter referred to as Harrah's Casino) in Chester, Pennsylvania and that he could not do any MMA events at Valley Forge Casino under his brand XFE because of a restrictive covenant that prevented him and XFE from promoting MMA events at Valley Forge Casino and other venues within a certain distance of Harrah's

10.    Feldman wished to partner with me and do MMA events with me under the CFFC brand so that he could do MMA events at Valley Forge Casino without breaching the restrictive covenant in the contractual agreement he had with Harrah's Casino.

11.    Initially, I had no interest in partnering with Feldman to do MMA events at Valley Forge Casino and did not see the benefit in doing so.

12.    However, during my meetings with Valley Forge Casino executives Mike Bowman and Jake Wagner, the two of them strongly urged that I enter into a partnership with David Feldman to do the MMA events there.

13.    I felt very pressured by the two of them to agree to the partnership with Feldman and I felt that if I did not agree to the partnership that it might jeopardize my ability to do my CFFC events there.

14.    Ultimately, I agreed to make Feldman a partner on my CFFC events at Valley Forge Casino and Valley Forge agreed to let me do my shows there.



15.    Me and Mr. Feldman partnered on two MMA events at Valley forge Casino in the year
       2013. The dates of those two shows were February 8, 2013 and April 12, 2013.

16.    After the April 12, 2013 event at Valley Forge Casino, me and Mr. Feldman had a
       disagreement over money and the contractual terms between us. (These terms were not
       in writing.)

17.    After that disagreement, I informed Mr. Feldman that I would no longer involve him with
       the MMA events at Valley Forge Casino.

18.    Mr. Feldman, despite his influence and pull at Valley Forge Casino, was unable to object
       to this because Valley Forge Casino was contractually obligated to allow me to do 3
       more MMA events over the course of 2013.

19.    This resulted in an ongoing feud between myself and Mr. Feldman.

20.    Sometime subsequent to this feud, I was told by Joey Intrieri that David Feldman
       informed him that he paid someone to have me killed.

21.    I called Mr. Feldman out on this over the telephone but he denied that he had paid
       anyone to have me killed.

22.    At the end of 2013, Valley Forge Casino was pleased with the financial benefit they
       received from doing business with myself and CFFC promotions so they entered into
       another contract with me on October 29, 2013 to do 4 more events in the year 2014.

23.    These events were scheduled to occur on February 1, 2014, May 17, 2014, August 23,
       2014 and November 1, 2014.

23.    The first CFFC MMA event I promoted at Valley Forge Casino in February of 2014 was
       extremely successful. Valley Forge Casino's President Mike Bowman and Director of
       Entertainment Jake Wagner , both told me how happy they were with the event and how
       much business it had created for Valley Forge Casino.

24.    However, before CFFC conducted its second MMA event at Valley Forge Casino in May
       of 2014, Valley Forge Casino breached the contract it had with CFFC and informed me



that they were canceling the rest of the MMA events that had been scheduled for 2014.

25.    Valley Forge Casino's pretext for breaching this contract and discontinuing CFFC MMA events at the casino was because the events were not making the casino any money. This was a complete and total contradiction of what I had been previously told by Valley Forge Casino's President and Director of Entertainment. This was also the very first time that Valley Forge Casino claimed that the MMA events I had promoted at their casino were not profitable.

26.    During my meeting with Valley Forge Casino about this breach of contract, I was informed that they would not host boxing events at the casino because they were similarly unprofitable for the casino.

27.    I do not believe that lack of profitability was the real reason why Valley Forge Casino breached its contract with CFFC. After Valley Forge Casino breached its contract with CFFC, it continued to host boxing events. Based upon my knowledge of boxing and MMA promotion, boxing events are not nearly as lucrative for casinos as MMA events. The people who attend MMA events are much more likely to spend money on the casino floor after the event than people who attend boxing events.

28.    It is my sincere belief that the reason Valley Forge Casino breached its contract with CFFC and prevented me from continuing to do MMA events at the casino was because David Feldman wanted CFFC removed.

29.    After CFFC was removed from Valley Forge Casino, I eventually made amends with Mr. Feldman.

30.    After the two of us made amends, I entered into negotiations with Feldman to acquire XFE and merge both companies into just Cage Fury Fighting Championships.

31.    I had interest in regaining access into Valley Forge Casino as well as Casinos venues such as Harrah's Casino and Sands Casino (aka, Sands Event Center) and I sought out to acquire XFE in order to gain CFFC access into those venues.



32.    Feldman and I eventually came to terms, executed a written agreement pursuant to those terms and I acquired XFE in July of 2014.

33.    This acquisition allowed CFFC to regain entry in Valley Forge Casino to promote MMA events.

34.    This acquisition also allowed CFFC to obtain entry into Harrah's Casino and Sands Casino (aka, Sands Event Center).

35.    CFFC could not obtain entry into these casino's prior to merging with David Feldman because Feldman was blocking CFFC's access into them. Mr. Feldman has admitted this to me.

36.    I have tried to get Sands Casino (Sands Event Center) to allow CFFC to do MMA events there prior to merging with Feldman but was turned away.

37.    I purchased Xtreme Fight Events from David Feldman knowing that Feldman would get CFFC access into Sands Casino (aka, Sands Event Center) and Harrah's Casino and get CFFC access back into Valley Forge Casino.

38.    CFFC has done 2 events at Harrah's Casino after acquiring XFE from David Feldman. However, the contracts attendant to those events were in Feldman's name and all dealings with the casino went through Feldman.

39.    I made every attempt to reach out to the casino officials at Harrah's Casino during the course of time I spent putting together and conducting the 2 CFFC events there. However, despite the fact that I am the President of CFFC, Harrah's Casino refuses to speak with me or anyone other than Mr. Feldman.

40.    Similarly, CFFC has promoted MMA events at Sands Event Center. However, Sands Event Center refused to speak with me or anyone other than Mr. Feldman.

41.    CFFC has now been kicked out of both Harrah's Casino and Valley Forge Casino because of the ongoing litigation in this matter.

42.    David Feldman is a contracted event promoter at Valley Forge Casino and Harrah's



Casino and it is my belief that he is a contracted event promoter at Sands Casino as well. He is responsible for booking numerous types of events at these casinos.

43. Though other venues in the Philadelphia, Pennsylvania region exist to do mixed martial arts events in other than just casinos, they are considerably more expensive and given the economics involved, doing a show at those venues prevents an MMA promotion from profiting on a level that allows the promotion to compete with a promotion who does their shows at these casino venues.

44. If I was forced to do my CFFC MMA events at non casino venues that cost money, instead of receiving a free casino venue and the cash payouts associated therewith, it would be financially devastating to my MMA promotion.

45. Casino venues allow the MMA promotions who do their shows in them to attract the "ticket selling" fighters away from their competition. These 'ticket selling' fighters will opt to fight for the promotions who do shows in a casino instead of its competition.

46. Having "ticket selling" fighters on an event is necessary for MMA promotions to profit from the production of their events.

47. 90% of a regional MMA event's attendance is comprised of the ticket sales of its fighters.

48. Having exclusive access to all of the casino venues in Pennsylvania gives a combat sports promotion the ability to achieve dominant market power over the industry.

49. MMA promotions who do their events at a casino can charge more for their event tickets than a competitor can charge in a non casino venue.

50. During one of my conversations with Mike Bowman, we discussed changing the language in CFFC's contract with Valley Forge Casino in order to circumvent the casino resort gaming rules regarding the statutory fee that must be paid in order to gain access to the casino floor.  Specifically, we discussed changing the contract so that the cost of admission to MMA events would include the statutory fee that legally must be paid by attendees of the MMA events in order to gain access to the casino gaming floor.



51.    I certify that the foregoing statements made by me are true to the best of my information, knowledge, and belief. I am aware that if any of the foregoing statements made by me are willfully false, i am subject to that punishment.

<u>9/21/15</u>
Date

Rob Haydak