IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RYAN KERWIN                         :
                                    :
         v.                         :    C.A. NO. 17-CV-5582
                                    :
PARX CASINO, et al.                 :

MEMORANDUM

SCHMEHL, J.   /s/ JLS                                    MARCH  8, 2019

Plaintiff, a mixed martial arts promoter, brought this *pro se* antitrust action, claiming that three Pennsylvania casinos and certain of their parent companies, management companies and employees conspired to engage in a horizontal group boycott of Plaintiff's mixed martial arts events as punishment for Plaintiff having filed a previous antitrust suit against two other local casinos. Plaintiff claims that the defendants' alleged actions violate Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff also alleges that the defendants' actions are in violation of the essential facilities doctrine under Sections 1 and 2 of the Sherman Act. Following the filing of motions to dismiss by multiple defendants for failure to state a claim, Plaintiff filed a motion for leave to file an Amended Complaint (ECF 41). The Court granted the motion as unopposed (ECF 52). Plaintiff subsequently filed an Amended Complaint (ECF 54). Presently before the Court are five motions to dismiss the Amended Complaint by various defendants. For the reasons that follow, the motions are granted.

Plaintiff is the owner of a mixed martial arts ("MMA") promotion company known as Xtreme Caged Combat ("XCC"). (Am. Compl., ECF 54 at ¶ 3). Plaintiff alleges that

he has promoted MMA events longer than any promoter in the history of Pennsylvania and that XCC has been in existence for over eight years. (*Id.* at ¶¶ 3-4).

The Amended Complaint alleges that: Defendant Parx Casino is a casino with an attached event center located in Bethlehem, Pa; Defendant Greenwood Gaming & Entertainment, LLC is the parent company of Parx Casino; Defendant Helmut Perzi is the Director of Entertainment at Parx Casino; Defendant SugarHouse Casino is a casino with an attached event center located in Philadelphia, Pa.; Defendant SugarHouse HSP Gaming LP is the parent company of SugarHouse Casino; Defendant SugarHouse HSP Gaming Prop Mazz is the parent company of SugarHouse HSP Gaming LP; Defendant Rush Street Gaming is the managing company which runs and oversees the operation of the Sugarhouse Casino; Defendant Linda Powers is the Vice President of Marketing at SugarHouse Casino; Defendant Julia Spieler is the Catering Sales Manager at SugarHouse Casino; Defendant Erika Joy Erb is the Director of Marketing at SugarHouse Casino; Defendant Jules Vorndran is the Vice President of & Casino Operations at SugarHouse Casino; Defendant Sands Casino is a casino with an attached event center located in Bethlehem, Pennsylvania; Defendant Sands Bethlehem Event Center is the event center that is attached to the Sands Casino; Defendant Sands Bethworks Gaming LLC is the parent company of Sands Bethlehem Event Center; Defendant SMG Worldwide Entertainment & Convention Venue Management is the facility management company that oversees the daily operations of Sands Event Center; Defendant James Hines is the General Manager of Sands Bethlehem Event Center. (ECF 54 at ¶¶ 5-26). .

According to Plaintiff's Amended Complaint, some time prior to the filing of the instant matter, Plaintiff filed an antitrust suit in this Court against Valley Forge Casino, Harrah's Casino, Cage Fighting Championships, and Xtreme Fight Events, among others, alleging claims of attempted monopolization, refusal to deal, and essential facility doctrine violations under the Sherman Act and the Clayton Act. (*Id.* at ¶¶ 35-36). Specifically, Plaintiff alleges "an illegal monopoly over the production of mixed martial arts events in all of the casinos in Pennsylvania who had the ability to host such events." (*Id.* at ¶ 37). The casinos involved in the monopoly were Valley Forge Casino and Harrah's Casino. (*Id.*) Plaintiff alleges that said monopoly "was procured by David Feldman (formerly of Xtreme Fight Events and Cage Fury Fighting Champions) who had gained serious influence over these casinos through various bribes paid to casino officials." (*Id.* at ¶ 38.) The parties reached a settlement and, as part of the settlement, Plaintiff agreed not to promote his MMA events at either the Valley Forge Casino or Harrah's Casino. (*Id.* at ¶ 40).

Plaintiff now alleges that the three casinos named as Defendants in this matter, are "acting in concert with one another, are now boycotting plaintiff from being able to promote his mixed martial arts events at all of their casinos as punishment for filing the antitrust suit he filed against Harrah's Casino and Valley Forge Casino." (*Id.* at ¶ 42). Plaintiff alleges that the relevant product market is the "market of mixed martial arts events." (*Id.* at ¶ 27). He alleges that the relevant geographic market is the "Eastern Pennsylvania Region that surrounds the Essential Casino Venues in question. This region is comprised of King of Prussia, Chester, Philadelphia, Bensalem and

Bethlehem, Pennsylvania as well as the nearby areas surrounding these same counties." (*Id.* at ¶¶ 30-31).

With regard to Defendant Sands Casino, Plaintiff alleges that the former Director of Entertainment at Sands Casino and Event Center, Matt Salkowski, allowed Plaintiff access to hold his MMA events on two separate occasions at the Sands' event center even after Plaintiff had filed his initial antitrust suit. (*Id.* at ¶ 44). Plaintiff alleges that Salkowski was forced to resign the day after Plaintiff held the second event. (*Id.* at ¶ 51). After Salkowski resigned, he was replaced by defendant James Hines. (*Id.* at ¶ 53). Two months after he promoted his second event at the Sands, Plaintiff spoke with Hines about doing more mixed martial arts events there. (*Id.* at ¶ 54). Hines agreed to allow Plaintiff to hold future events at the Sands' event center but offered Plaintiff unfavorable terms and conditions. (*Id.* at ¶¶ 55-57). Plaintiff alleges that Hines' intent was to make it unprofitable for Plaintiff to promote an event at the Sands which would force Plaintiff to decline the offer without the Sands having to explicitly deny Plaintiff access. Plaintiff alleges that he had no choice, but to reject the unfavorable terms. (*Id.*)

Plaintiff alleges that no other MMA events have taken place at Sands Casino since Plaintiff's second event because the Sands drove up the rental fees so high that doing an event there would be unprofitable. (*Id.* at ¶ 57). Although Plaintiff alleges that the increase in rental fees was done to keep Plaintiff out of the Sands, he alleges at the same time that "no competing promotions have agreed to such inflated terms either." (*Id.*) Plaintiff alleges that boxing events promoted by David Feldman are still taking place at the Sands on much better terms than were offered Plaintiff. (*Id.* at ¶ 60).

4

With regard to defendant SugarHouse Casino, Plaintiff alleges that on October 27, 2015, he contacted the Casino about conducting his MMA events at the Sugarhouse event center, which was scheduled to open in March 2016. (*Id.* at ¶ 61). After speaking with defendants Julia Spieler and Erika Joy Erb, both of whom seemed very interested in Plaintiff's MMA events, Plaintiff submitted a written proposal. (*Id.* at ¶ 63). After receiving Plaintiff's proposal, Erb spoke with the Vice President of Marketing at SugarHouse Casino, defendant, Linda Powers. (*Id.* at ¶ 65). On November 6, 2015, Erb sent Plaintiff an email informing him that, after speaking with Powers, it was determined that the "timing is just not right" and that Plaintiff should check back in June, 2016 to discuss holding an event at the event center in the fall of 2016. (*Id.*) On May 9, 2016, Erb informed Plaintiff that SugarHouse had no interest in committing to any dates for XCC holding a MMA event in the fall of 2016. (*Id.* at ¶ 69).

SugarHouse scheduled a boxing event with Hard Hitting Promotions to take place at the event center on August 26, 2016. (*Id.* at ¶ 70). On July 20, 2016, Helen Locura from XCC emailed Erb about XCC holding its own boxing event at the Center. (*Id.* at ¶ 71). After the exchange of a series of emails, Erb informed Locuro by email dated July 29, 2016 that "[w]e are still testing out our involvement with boxing events and are not ready to commit to anymore at this time. We will reach out once we internally discuss our future involvement with the sport. Thanks!" (*Id.* at ¶ 73). Although Erb had told Plaintiff that SugarHouse was not ready to commit to hosting any more boxing matches, SugarHouse apparently had already scheduled a second boxing event with Hard Hitting Promotions for October 28, 2016. (*Id.* at ¶ 78).

5

At this point, Plaintiff contacted the ring announcer for SugarHouse and XCC, Pat Fattore, who offered to speak with the Vice President of Marketing & Casino Operations at SugarHouse, defendant Jules Vorndran. (*Id.* at ¶¶ 81-82). Fattore informed Plaintiff that Vorndran had told him that SugarHouse "would be delighted to have [XCC] do its events at the casino." (*Id.* at ¶ 83). Fattore provided Plaintiff with Vorndran's cell phone number. (*Id.*) On September 1, 2016, Plaintiff called Vorndran who informed Plaintiff that he "would be delighted to have XCC do its events there" and offered to give Plaintiff a tour of the facility and contractual details on September 5 or September 6, 2016. (*Id.* at ¶ 85).

About an hour later, however, Vorndran called Plaintiff and left a message on Plaintiff's voicemail to the effect that he had spoken to "Linda" and that the SugarHouse would not be interested in having any MMA event until sometime after January 1, 2017. (*Id.* at ¶ 86). Plaintiff called Vorndran and was told that the events center was completely booked for the remainder of 2016, that Plaintiff could not come to see the events center and that there would be no contractual discussions for an event in 2017. (*Id.* at ¶ 88). Plaintiff alleges that "Linda" is defendant Linda Powers, the Vice-President of Marketing at SugarHouse. (*Id.* at ¶ 89).

After speaking with Vorndran, Plaintiff sent an email to Spieler and Erb on September 1, 2016 informing them of his intention to sue SugarHouse. (*Id.* at ¶ 90). The email further stated that "[y]ou are obviously well aware of the previous suit so all of us know this not a bluff." (*Id.*) Plaintiff alleges that Erb called Plaintiff and the following conversation ensued:

| | |
|---|---|
| **Plaintiff:** | Hello. |
| **Erika:** | Hi Ryan, this is Erika. You don't need to speak, you can just listen. First of all, I have much more important things to worry about then responding to your email …………………………………………….. …………………………………………………………………….. Now, no matter what you say or do, Sugarhouse is never going to let you in here. If it wasn't for you we would have had mma events here long ago. You filed that lawsuit, now live with it. Now have a nice day. (Immediately hung up.) |

(*Id.* at ¶ 92). Plaintiff alleges that SugarHouse has continued to allow Hard Hitting Promotions as well as David Feldman to promote boxing events at the casino. (*Id.* at ¶ 95).

With regard to Parx Casino, Plaintiff alleges that he emailed defendant Helmut Perzi, the Director of Entertainment for Parx Casino, on May 6, 2017 regarding the possibility of XCC holding MMA events at the Casino's event center, which was scheduled to open in the near future. (*Id* at ¶101). Plaintiff spoke with Perzi by phone on May 22, 2017. (*Id.* at ¶ 106). Following the conversation, Plaintiff emailed Perzi offering to beat the offer of any other MMA promoter and to guarantee attendance. (*Id.* at ¶ 107). Over the next two months, Perzi emailed Plaintiff to tell him that the Parx Casino was "reviewing its options." (Id. at ¶¶ 108-111). Plaintiff met with defendant Perzi on August 1, 2017 to discuss the terms and conditions of a possible relationship between XCC and Parx Casino. (*Id.* at ¶¶120-121). Perzi's offer to Plaintiff included a $3,000 rental fee and the requirement that Plaintiff provide 100 free tickets to the Casino. (*Id.* at ¶ 121). Plaintiff not only agreed to the proposal, but offered to actually supply the casino with 200 free tickets. (*Id.* at ¶ 123). In response, Perzi sent Plaintiff an email which stated, inter alia, "[a]ll of our decisions are not always about the best

7

financials, but with whom we are comfortable working with and we find synergy with to be successful together." (*Id.* at ¶ 124). Ultimately, defendant Perzi contacted Plaintiff on November 14, 2017 and informed him that Parx Casino was deciding between two other companies for MMA events at the Casino. (*Id.* at ¶¶ 128-129).

Plaintiff further alleges that "[Rob] Haydak and [Cage Fury Fighting Charnpionships] will now move forward with doing their mma events at Parx Casino's event center." (*Id.* at ¶ 131). According to Plaintiff, Mr. Haydak informed him, during an October 28, 2016 meeting at the Borgata Casino, that CFFC had already agreed to terms with Parx Casino for CFFC to promote MMA events at Parx Casino. (*Id.* at ¶¶ 112-113).

Plaintiff alleges that "[a]llowing a competing mma promotion to do their mma events at the Defendant Casinos, while simultaneously refusing to allow Plaintiff to do his events there, will result in Plaintiff going out of business." (*Id.* at ¶ 137). Plaintiff further alleges that "[i]f Plaintiff is put out of business by the Defendant Casino's horizontal group boycott, it will result in the remaining Mixed Martial Arts promotion [sic] who has the ability to do events at the Casinos obtaining market power and monopolistic control over mixed martial arts in the Eastern Pennsylvania region." (*Id.* at 138).

**STANDARD OF REVIEW**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at

663; see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ethypharm S.A. France v. Abbott Labs.,* 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Applying the principles of *Iqbal* and *Twombly*, our Court of Appeals in *Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203,

210-11 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**DISCUSSION**

In Count One of the Amended Complaint which asserts a claim against the defendants for horizontal group boycott, Plaintiff makes the following allegations:

140. Parx Casino, Sugarhouse Casino and Sands Casino and Event Center, control facilities that host events in plaintiff's product market and regional market that he requires access to in order to remain a viable competitor in his commercial industry.

141. Parx Casino, Sugarhouse Casino, Sands Casino and Event Center, their owners, and Defendants James Hines, Helmut Perzi, Erika Joy Erb, Julia Spieler, Jules Vorn Oran and Linda Powers collectively entered into a conspiracy to boycott plaintiff and his mixed martial arts promotion Xtreme Caged Combat from being permitted the ability to promote his mma events inside the casino defendant's venues.

142. Parx Casino, SugarHouse Casino and Sands Casino and Event Center, as well as their owners and employees, are direct competitors with one another, and the conspiracy entered into between these parties is horizontal.

143. This horizontal conspiracy is a per se antitrust violation.

144. Parx Casino, Sugarhouse Casino and Sands Casino and Event Center, and their owners and employees, have no legitimate business reason for not allowing plaintiff and XCC the ability to promote his mma events at their casino venues and under fair and reasonable terms.

145. Parx Casino, Sugarhouse Casino and Sands Casino and Event Center's, and their owners and employees, refusal to allow plaintiff access into the casino venues to do his mma events

146. Parx Casino, Sugarhouse Casino and Sands Casino and Event Center, and their owners and employees, had a unity of purpose and a common design and understanding amongst and between one another to boycott plaintiff and his MMA promotion form the casino venues as punishment for filing his antitrust suit against Harrah's and Valley Forge Casino.

and under fair and reasonable terms has no purpose except to stifle competition.

(ECF 54 at ¶¶ 141-142; 144-146).

Section 1 of the Sherman Act prohibits "every contract, combination . . . , or conspiracy" that unreasonably restrains trade. 15 U.S.C. § 1. All three of these terms essentially mean that Plaintiff has to plead an agreement or "some form of concerted action…, in other words, a unity of purpose or a common design and understanding or a meeting of minds or a conscious commitment to a common scheme . . ." *In re Ins. Brokerage Antitrust Litig.*, 618 F. 3d 300, 315 (3d Cir. 2010) (citations and internal quotation marks omitted). "Unilateral activity by a defendant, no matter the motivation, cannot give rise to a [S]ection 1 violation." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F. 3d 144, 159 (3d Cir. 2003).

"To adequately plead an agreement, a plaintiff must plead either direct evidence of an agreement or circumstantial evidence." *Burtch v. Milberg Factors, Inc.* 662 F. 3d 212, 225 (3d Cir. 2011). Direct evidence of a conspiracy is "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Ins. Brokerage*, 618 F.3d at 324 n. 23.

Plaintiff has failed to plead direct evidence of an agreement. To the contrary, Plaintiff alleges an agreement to boycott Plaintiff and his MMA events only in the most conclusory of terms. For example, the *sole* allegation in the Amended Complaint of an

11

alleged conspiracy states: "[a]ll of the Pennsylvania Casinos, **acting in concert with one another** are now boycotting plaintiff from being able to promote his mixed martial arts events at all of their casinos. . ." (Am. Compl. at ¶ 42) (emphasis added). *See also id.* at ¶ 141 (repeating same conclusion with slightly different wording but without alleging any facts). However, such allegations of a "conclusory nature…are not entitled to assumptions of truth," *Burtch*, 662 F.3d at 225, and *Twombly* requires more than "a few stray statements [that] speak directly of agreement." 550 U.S. at 564; *see also Schuylkill Health Sys. v. Cardinal Health 200, LLC*, No. 12-7065, 2014 WL 3746817, at *7 (E.D. Pa. July 30, 2014) (dismissing conspiracy claims and explaining "most telling factor" was that Plaintiff "state[d] only in a conclusory fashion that Defendants conspired to allocate markets or employ identical contract terms"). Indeed, the Amended Complaint lacks *any* allegation related to Defendants' purported group boycott.

Plaintiff argues that Erb's email to him in which Erb stated "SugarHouse is never going to let you in here. If it wasn't for you, we would have had MMA events here long ago. You filed that lawsuit, now live with it." (ECF 77 at 11 (quoting Am. Compl. at ¶ 92)) constitutes direct evidence of a conspiracy. At best, Erb's statement constitutes unilateral action on the part of SugarHouse Casino not to do business with Plaintiff. Plaintiff has not alleged any connection between Erb's statement and any actions of employees of Parx Casino and Sands Casino. Indeed, Plaintiff alleges that Erb made this statement as part of her response to Plaintiff's earlier email on the same day in which he threated to sue SugarHouse Casino. (*Id.* at 92).

Plaintiff also argues that non-party David Feldman's alleged revelation of a plot by Sands Casino to allow Plaintiff to do one promotion at the Sands' event center in the

12

hope that he would fail constitutes direct evidence. (ECF 77 at 12-13 citing Am. Compl. at ¶¶ 44-50). Again, even assuming the truth of this allegation, it demonstrates nothing more than unilateral action on the part of Sands Casino and not a conspiracy between all three Defendants. In any event, Plaintiff admits that he was in fact allowed to promote two MMA events at the Sands' event center even after the filing of his initial antitrust lawsuit. (*Id.*) The Court finds that Plaintiff has failed to plead any type of an agreement at all through allegations of direct evidence.

Circumstantial evidence of parallel behavior must be pled in "a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955. The law is well-established that "evidence of parallel conduct by alleged co-conspirators is not sufficient to show an agreement." *Ins. Brokerage*, 618 F.3d at 321; Plaintiff must allege both parallel conduct and something "more," commonly referred to as a "plus factor." *Id.* A plus factor could include evidence (1) "that the defendant had a motive to enter into a . . . conspiracy," (2) "that the defendant acted contrary to its interests," or (3) "implying a traditional conspiracy." *Id.* at 321-22. Such facts must "tend to *rule out the possibility that the defendants were acting independently*." *Ins. Brokerage*, 618 F.3d at 322-23 (emphasis added) (quoting *Twombly*, 550 U.S. at 553-54).

Plaintiff cannot meet this burden where, as here, "'*common economic experience*,' or the *facts alleged in the complaint itself*, show that independent self-interest is an *'obvious alternative explanation'* for defendants' common behavior." *Id.* at 326 (emphasis added). Here, Plaintiff has failed to plead any facts that, as *Twombly* and *Insurance Brokerage* require, "rule out the possibility that the defendants were acting

13

independently." 618 F.3d at 321. The few facts that Plaintiff pleads with respect to Defendants' refusal to host his MMA events clearly demonstrate conduct consistent with independent decision-making and that Defendants' independent self-interest is an "obvious alternative explanation" for Defendants' conduct. *See id.* at 322-23.

Specifically, with regard to the Sands Defendants, Plaintiff admits that he actually promoted two events at the Sands Casino during his alleged boycott (Am. Compl. at ¶¶ 44; 49-50) and was offered the opportunity to host an additional event, but declined because he did not like the business terms offered. (*Id.* at ¶¶ 55; 57). In addition, Plaintiff alleges that no MMA events have taken place at the Sands Casino since Plaintiff's last event because the other MMA promoters will also not agree to the Casino's "inflated terms." (*Id.* at ¶ 59).

With regard to both SugarHouse (*see id.* at ¶¶ 61-100) and Parx (*see id.* at ¶¶ 101-131), Plaintiff's Amended Complaint discloses that both of these casinos engaged in a lengthy dialogue with Plaintiff but were non-committal about hosting his events and ultimately declined. It is certainly probable that the harassing and threatening nature of Plaintiff''s constant communications with both Casinos and their representatives caused each casino to unilaterally not want to enter into a business relationship with Plaintiff. (*Id.* at ¶¶ 90-92; 117-119). See also *id at* ¶124 ("All of our decisions are not always about the best financials, but with whom we are comfortable working with and we find synergy with to be successful together.") After all*, in this country a* business has "the right to deal or not to deal with whomever it likes, as long as it does so independently." *Laurel Sand & Gravel, Inc. v. CSX Transp. Inc.* 924 F.2d 539, 542 (4th Cir. 1991).

Moreover, assuming, *arguendo*, that each of the three Casinos *independently* decided to boycott XCC from doing MMA events at their event centers solely because of Plaintiff's previous suit, Plaintiff does not identify a single meeting, phone call, or document in which an *agreement* concerning a group boycott was reached between any of the Defendants. Nor does Plaintiff identify a single employee of any Defendant who was involved in forming an unlawful agreement with an employee of another Defendant. Finally, Plaintiff does not state any facts at all that would indicate that any alleged agreement was even formed, or what it entailed.

In short, nowhere in the Amended Complaint does Plaintiff allege any evidence of a conspiracy that supports an inference of collusion. The Amended Complaint fails to allege any facts demonstrating "traditional" noneconomic evidence of conspiracy. *Ins. Brokerage*, 618 F.3d at 322. Instead, Plaintiff attempts to imply a conspiracy claim from allegations that since he supplied the Defendants with better business proposals than those of his competitors the fact that none of the three Defendants would enter into an agreement with Plaintiff must mean that the Defendants engaged in a horizontal conspiracy to boycott Plaintiff. In making this argument, Plaintiff ignores the other allegations in the Amended Complaint that indicate purely unilateral conduct of each Casino Defendant in not wanting to enter into a business relationship because of his threatening and litigious actions. None of the allegations in the Amended Complaint demonstrate that "the inference of rational independent choice is less attractive than that of concerted action." *Ins. Brokerage*, 618 F.3d at 323 & n.22 (quoting *Lum v. Bank of America*, 361 F.3d 217, 230 (3d Cir. 2004)).

Accordingly, since Plaintiff has failed to plead an agreement, we need not reach any of the other elements of claim under Section I of the Sherman Act and Count I will be dismissed.

In Count Two, Plaintiff alleges that Defendants (as well as previous defendants Harrah's Casino and Valley Forge Casino) are collective monopolists who have control of essential facilities from Central to Eastern Pennsylvania to which Plaintiff needs access in order to remain a viable competitor in the MMA industry. (*Id.* at ¶¶ 152-162).

"[U]nder the 'essential facilities' or 'bottleneck' doctrine, 'a business or group of businesses which controls a scarce facility has an obligation to give competitors reasonable access to it.'" *Cyber Promotions, Inc. v. Am. Online*, Inc., 948 F. Supp. 456, 460 (E.D. Pa. 1996) (citing *Byars v. Bluff City News Co., Inc.*, 609 F.2d 843, 846, 856 & n. 34 (6th Cir.1980). The elements of an essential facility claim are: "(1) control of the essential facility by a monopolist; (2) the competitor's inability practically or reasonably to duplicate the essential facility; (3) denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 748 (3d Cir. 1996).

"An 'essential facility' is one that is not merely helpful but vital to the claimant's competitive viability." *Cyber Promotions,* 948 F. Supp. at 463 (E.D. Pa. 1996*).* For purposes of antitrust law, "essential means essential; it does not mean 'the most economical.' Nor does it mean 'best' or 'preferable.' A facility is not essential even if it is widely preferred by consumers and producers in the market, as long as there is an alternative (albeit inferior) venue." *JamSports and Entertainment, LLC v. Paradena Productions, Inc.,* 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004).

Plaintiff's own allegations in the Amended Complaint undermine any claim that the event centers of the Defendant Casinos are essential facilities. Plaintiff alleges that he has promoted MMA events longer than any promoter in the state's history and that XCC has been in existence for over eight years. (Am. Comp. at ¶¶ 3-4). Plaintiff further alleges that he has promoted 16 of his 29 MMA events at the National Guard Armory in Philadelphia and was scheduled to promote a 17th event at the armory on February 3, 2018. (*Id.* at ¶ 103). Obviously, an MMA event can take place in many different kinds of venues.  In fact, Plaintiff even admits that besides the casino event centers, other venues exist such as the National Guard Armory for him to promote his MMA events. By his own words he has ended up promoting MMA events in this state longer than any other promoter.  Plaintiff also alleges that as part of his settlement with Valley Forge Casino and Harrah's Casino in the previous case, Plaintiff agreed not to use their event centers to promote any of his MMA events. (Id. at ¶ 40). Therefore, two of the five casinos that Plaintiff alleges comprise the essential casino market are not available because it was Plaintiff himself who agreed not to host events at these casino's event centers. Again, essential does not mean the most economical or the most preferable. Plaintiff does not allege that attendance at his promotions has dwindled, that he has had to raise ticket prices or that his fighters have refused to fight at venues other than casinos. As long as Plaintiff has access to alternative venues such as the National Guard Armory, hotels, arenas and other venues to promote his MMA events, even though in Plaintiff's view such venues are economically inferior to the casino event centers, access to casino event centers is not essential to Plaintiff's competitive viability.

The Court also notes that the essential facilities doctrine is applicable "only where a party is being denied access to something necessary for that party to engage in business which is controlled by his competitors." *Mid-South Grizzlies v. National Football League*, 550 F. Supp. 569-70 (E.D. Pa. 1982) (emphasis added).

Plaintiff does not and cannot allege that any of the casino defendants are competitors with Plaintiff. Indeed, Plaintiff alleges that Defendants own or manage casino event facilities (or are employed by such), and that he promotes MMA events. Plaintiff does not allege that he is in the casino business; nor does he allege that any of the Defendants are in the business of promoting MMA events. Accordingly, he cannot even establish that Defendants have denied an essential facility to a competitor.

Plaintiff has filed a motion to for leave to file a second amended complaint. In doing so, Plaintiff fails to take into consideration that he has already been given an opportunity to amend his complaint after the Defendants filed motions to dismiss his original complaint. Further, in light of the reasons cited above for dismissing his claims, Plaintiff has not set forth any reason to believe that further amendment of his complaint will cure the deficiencies identified by the Court. *Phillips*, 515 F.3d at 245 (3d Cir.2008) (determining that dismissal without leave to amend is justified where the amendment would be futile).

An appropriate Order follows.